*450 The opinion of the Court was delivered by
Town, J.
This is an action of partition, tho parties to which are tho heirs of James N. Brown, who died in the Parish of Iberville on the 27th of September, 1859. Tho defendants are appellants from a judgment of the late Parish Court of said parish, ordering a sale of the property of the sucoession, to effect a partition and fixing the amounts to be collated by tlio several heirs.
The leading facts connected with this controversy, of which mention need he made, are substantially as follows :
Tho deceased left at his death a large estate, and six children, four of whom were minors. Two of the minor heirs died shortly after their father. Of tho remaining minors, one Mary E. Brown (now Mrs. Feltus,) became of age sometime in 1862, and tho other, Isaac D. Brown, in 1869.
Tho deceased left at his death a last will and testament, dated on the 30th of June, 1859, from which we extract the following, as pertinent to this suit:
“ I will, that after the sugar and molasses, etc., has been sold, that is now on the place, that, with the ready money now on hand he divided in six equal portions, the majors to at once take possession of their portions. At the maturity, or in other words, as each minor becomes of age, they are to receive from the administrators of my estate, fifty thousand dollars in cash each, together with that portion of the revenues with their proceeds that may accumulate from year to year, so as to make what my six children receive from me precisely equal.
“ At eaeli sale of the crop, after paying the current expenses of both plantations, the net revenue of the minors’ portion, as well as their portion of my estate, I have directed to he sold and to be invested by my administrators in good acceptances ór bills receivable for their account, a.s the majors will, of course, he present and receive for themselves.”
John M. Brown, the oldest son of the deceased, and Gilbert S. Hawkins, of New Orleans, were appointed executors of the estate, and qualified as such. They both died in 1864, without rendering an account of their administration.
John M. Brown also became dative tutor to the minors Mary E. and Isaac D. Brown, and upon his death, the plaintiff’s husband, (Jas. N. Ventress) she being one of the major heirs at the death of the deceased, was appointed tutor to Isaac D., the other minor (Mary E.) having, in ■the meantime, attained her majority and married.
Ventress also, on the death of the executors named in the will, became executor of the estate of Jas. N. Brown, and remained executor *451 till removed from office by a judgment of tlie Parish Court; and in September, 1872, the plaintiff was appointed executrix of the estate.
The property of the succession of James N. Brown, deceased, consisted mainly of two plantations, “ Oakland,” situated in the Parish of Plaquemines, and “ Manchac,” in the Parish of Iberville. The former was sold to pay the legacy of Mrs. Feltus, on the 7th of August, 1867, and purchased by her at the judicial sale for $70,000. She retained of the price $62,500 on account of the principal and interest of her legacy, and gave her note for the balance, $7,500.
The Manchac Plantation was subsequently sold to discharge the legacy of Isaac D. Brown, and was bought by him for $71,644.16|-, on which amount, it is conceded, that he was entitled to credits, for payment made at time of sale, and certain charges against the property settled by him, to the extent of $9,187.58, leaving a balance received by him, in the property thus purchased, amounting to $62,456.58#.
These plantations comprised as stated, the main property of the succession. The suit .is for the partition of the residue. The contention relates to the question of collations between the several heirs, and is caused, to a great extent, by the losses resulting from the war which prevailed during several years of the administration of the succession, and the confusion arising from the destruction by fire of the books of Hawkins & Norwood, the merchants to whom were consigned the crops from the plantations, and by whom the distribution of the proceeds of the crops sold was made among the heirs, Hawkins, one of the firm, being an executor of the estate.
The condition of things resulting from these causes gave rise to a great deal of litigation toucliing the affairs of the succession, and the respective claims of the heirs, the proceedings relating to which have come, up with the record in this case, and have swelled it to more than a thousand pages* Some of these proceedings we will have occasion to refer to hereafter.
We have diligently and with great care and patience examined this voluminous record, and have thoroughly considered every question connected with the issues in the case, and shall content ourselves with simply announcing our conclusions where they concur with those reached by the Judge of the lower court, and confine our discussion to those points wherein we have arrived at a different conclusion from him ; and give our reasons briefly for the changes we feel constrained to make in his judgment.
So many are the questions arising from proceedings connected with the administration of an immense estate, protracted for nearly twenty years, and a part of that time marked with the irregularities, *452 embarrassments and confusion growing out of a state of war, that any other course than this would be impracticable.
1. Before, however, entering upon a consideration of the merits of the case, which, as stated, relate exclusively to the matter of collations by the heirs, there are certain preliminary questions suggested by the exceptions in the record tobe disposed of.
The first is that raised by the exception denying the right of an executrix to provoke a partition of an estate.
Inasmuch as the plaintiff sues for this partition in both capacities, as executrix and heir, and all the defendants in their answers have joined in the prayer for a partition, it becomes unnecessary to decide the point raised as to the right or power of an executrix, in such capacity, to institute the proceeding.
All the heirs are parties to the suit, and the joinder of the executrix, and the admission of the parties, and the evidence in the record, show that the debts and legacies have been discharged, and no legal obstacle longer exists to a partition.
2. The next question is that presented by a bill of exceptions taken by the plaintiff to the introduction of evidence admitted to establish the amounts to be collated by her; the objection to such evidence being that the amounts and subjects of such collations were not set forth by either plaintiff or defendants in their pleadings. The Judge a quo admitted the evidence, and we think properly. The partition was claimed and provoked by the plaintiff. No legal or proper partition or settlement could be made unless the collations were first fixed. The partition showed that collations were due from all the heirs, and set out specifically the collations to be made by the defendants, and referred to a suit between plaintiff and her husband, and sought to correct an alleged error which that record afforded, as to the collations to be made by the plaintiff. Considering the character and object of the suit, and the nature of the pleadings referred to, the evidence was clearly admissible. We can seeno reason why the allegations touching collations should be more precise, where they are to be determined by the Judge, than when they are referred to be adjusted by the notary in the proceedings before him; and in the latter case it is not pretended that any such precision and nicety is required.
3. The plea of res judicata was interposed by the plaintiff to any attempt on the part of the defendants to disprove the correctness of the collations charged in the petition as due by them respectively.
The plea was based on the following facts and proceedings:
' After the death of the first executors, (John M. Brown and Gilbert Hawkins) their successors instituted a suit against the succession of the deceased executor, (Brown) with a view to determine his liability to *453 tlie estate of James N. Brown, growing out of his administration of that estate. The succession sued was charged, with the whole amount of the inventory of the succession administered, being some $450,000, and required to account for the same. It was alleged in the suit that payments of largo amounts had been made by the deceased to the heirs, and they were made parties, with a view to fix the amount of such payment. The heirs cited, excepted to being joined in the proceeding, and were dismissed therefrom, their exception being sustained.
The suit was tried and the liability of John M. Brown’s succession to James N. Brown’s succession was fixed at about $18,000, on proof of payments made by the deceased executor to creditors and heirs, and otherwise. It is contended that the amounts shown in that suit to have been paid to the heirs, determined, as a thing adjudged, the amounts to 1)6 collated by them in the partition of the succession.
We do not think so. The heirs, as stated, were not parties to the •suit, personally; the legal representatives of the two successions litigant did not represent them ; they were not before the Court to contest the amouuts with which they were charged. The amounts of such charges wore mere incidents of that suit, while the thing to be adjudged, the sole object of the suit, was the determination of the amount owing by the one succession to the other.
However, the proceedings and evidence in that case may assist us in our investigations in this, yet the judgment rendered therein is not res judicata upon any issue in this case. Had it been so, our labors and investigations would have been vastly abridged.